LESTER ROSENTHAL and EDYTHE ROSENTHAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Commissioner
Rosenthal v. Commissioner
Docket No. 3451-79
United States Tax Court
T.C. Memo 1982-369; 1982 Tax Ct. Memo LEXIS 377; 44 T.C.M. (CCH) 316; T.C.M. (RIA) 82369; June 29, 1982
Lester Rosenthal, pro se. W. Robert Abramitis, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1975 and 1976 in the amounts of $ 19,097 and $ 7,926, respectively, and additions to tax under section 6653(a) [1] in the respective amounts of $ 955 and $ 396. The issues for decision are: (1) Whether petitioners have shown that they are entitled to deductions for contributions in each of the years 1975 and 1976; interest expense in the year 1975; taxes in the year 1975; medical expenses in each of the years 1975 and 1976; business expenses claimed on Schedule C of the return for each of the years 1975 and 1976; a bad debt deduction in 1976; and deductions for travel, lodging, *378 automobile and telephone expenses in connection with a consulting business in 1975 in an amount in excess of that allowed by respondent. (2) Whether part of the underpayment of tax in each of the years 1975 and 1976 is due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2]
*379 Petitioners, Lester and Edythe Rosenthal, filed joint Federal income tax returns for each of the years 1975 and 1976 with the Internal Revenue Service Center in Chamblee, Georgia. At the time of the filing of their petition in this case, Mr. and Mrs. Rosenthal resided in North Miami Beach, Florida. For some years prior to 1975, petitioners had operated a school in Tampa, Florida, as a sole proprietorship. The school was known as the Adelphi School and was referred to by Mr. Rosenthal as Enterprises. We will hereinafter refer to the Adelphi School as Enterprises. Petitioners reported the income and deductions in connection with the operation of this school in each of the years here in issue, and in years prior to the years here in issue, on a Schedule C attached to their Federal income tax returns. On the Schedule C for each of the years 1975 and 1976, the name of the business was shown as Adelphi School and the method of accounting was shown as cash. Petitioner Lester Rosenthal was the owner of all of the stock of a corporation known as Adelphi Business and Tutoring Schools, Inc. The address of the corporation was in North Miami Beach, Florida. The corporation filed a Federal *380 corporate tax return, Form 1120, for each of the years 1974, 1975, and 1976. On these returns, the date of incorporation was shown as June 8, 1965. At least through the year 1974, the corporation operated a school in the Miami, Florida, area. The extent to which the school was operated thereafter is not clear from the record. In December 1974, the corporation sold its land and buildings and certain other assets for a total price of $ 240,000. The amount of $ 70,000 of the sales price was paid in cash and the purchaser, Eilers-Bradford Enterprises, Inc., a Florida corporation, and Hans Eilers, individually, gave a promissory note to the corporation for the $ 170,000 balance of the selling price with interest at the rate of 12 percent per annum from December 27, 1974. The indebtedness was to be paid in equal monthly installments of $ 1,875, commencing on February 22, 1975. The note provided for prepayment privileges. During 1975, the maker of the note did not pay in full each monthly payment as it became due. This failure to pay in full the monthly payments continued into 1976. However, some payments were made with respect to the note in 1976 and in the years following 1976. *381 Petitioners claimed a bad debt deduction on their return for the year 1976 with respect to this note. On its 1974 Federal income tax return, the corporation claimed a deduction for salary to its president, Mr. Rosenthal, of $ 70,000 and a deduction for salary to Edythe Rosenthal, its secretary, of $ 20,850. On the corporate 1975 return, a deduction was claimed for salary of $ 30,000 to Edythe Rosenthal, secretary, and no deduction was claimed for salary to Lester Rosenthal, president. However, on the 1975 corporate return a deduction was taken for salaries and wages not deducted elsewhere of $ 19,883. Whereas the 1974 return of the corporation showed gross receipts from sales after deduction for returns and allowances of $ 464,165, as well as income from interest and capital gains, the 1975 return reported gross receipts from sales of only $ 43,880 but also reported income from dividends and capital gains. The 1976 return of the corporation reported no gross receipts from sales and the only income reported on that return was from dividends, interest, and capital gains. Petitioners, in addition to maintaining a personal bank account, maintained a bank account for their sole *382 proprietorship school business, Enterprises. At one time a checking account was maintained by the corporation but by 1976 the corporation had only a savings account. Most of the checks on all of these accounts were written by Mr. Rosenthal, although some were written by Mrs. Rosenthal. Mr. Rosenthal would pay obligations of Enterprises at times from corporate funds and at times would pay obligations of the corporation from the Enterprises' account. In an effort to reconcile the various payments, Mr. Rosenthal kept a record entitled "L.R. Exchange" account. The purpose of the account entitled "L.R. Exchange" was to reconcile the amounts owed by the corporation to Mr. Rosenthal or Mrs. Rosenthal or their sole proprietorship with the amounts of payments made from corporate funds for petitioners' personal expenses or expenses of Enterprises. This account also was to cover any salary credited on the corporate books to Mr. and Mrs. Rosenthal which had not actually been paid to them. Also included were such items as a credit to the corporation for use of the name Adelphi by Enterprises. Many unexplained yearend adjustments were made in the "L.R. Exchange" account. No amount of cash *383 was ever transferred from the Rosenthals or Enterprises to the corporation or from the corporation to the Rosenthals or Enterprises in connection with any of the adjustments made on the "L.R. Exchange" account. Included in the business expenses deducted by petitioners on Schedule C on their 1975 return was an amount of $ 31,046 described as "Adelphi services." Respondent disallowed $ 25,373 of this amount. The $ 25,373 was composed of a $ 10,000 credit to the corporation from Enterprises on the "L.R. Exchange" account for use of the name Adelphi by Enterprises and an amount of $ 15,373 which represented wages paid to various individuals by the corporation. The corporation owned a 1973 Ford van. This Ford van was given to a charitable organization in 1976. Title was transferred directly from the corporation to the charity. Petitioners on their individual Federal income tax return for 1976 claimed a $ 3,000 charitable deduction for the value of the van donated to the charity. Petitioners drove at least twice every month from Miami to Tampa in connection with the operation of the individual proprietorship business in Tampa. The round trip was approximately 500 miles. In addition, *384 petitioners owned cars which were kept in Tampa for use of the Tampa school. Petitioners on their 1975 tax return deducted as part of the business expenses of the sole proprietorship, Enterprises, the amount of $ 5,597 as auto and travel expense. Respondent disallowed $4,470 of this claimed deduction. The $ 1,127 deduction allowed was based on certain canceled checks and receipts which petitioners had totaling $ 1,186.39. Petitioners leased space from the Calvary United Methodist Church for the use of Enterprises. The lease required a rental payment of $ 300 a month and in addition petitioners were required to make extra payments for certain utility costs incurred by the church. Petitioners claimed on Schedule C of their 1975 return as business expenses rental of $ 33,398. The rental expense claimed included $ 3,600 as the regular payment of rental to the Calvary United Methodist Church, as well as amounts for the extra payments to the church for utility expenses. Respondent allowed only $3,300 of the claimed rent paid to the Calvary United Methodist Church since petitioners could produce only 11 checks drawn in 1975 to the church. Petitioners claimed no depreciation deduction *385 on Schedule C of their tax returns in connection with the operation of Enterprises for any year prior to 1976. For the year 1976, petitioners claimed a depreciation deduction of $ 12,000 in connection with the operation of Enterprises. In the Tampa operation, Enterprises, petitioners had certain furniture and equipment of varying ages in 1976. There were 6 typewriters, 6 tables, 20 chairs, 3 desks, 2 file cabinets, 1 supply cabinet, 3 swings, some soccer and baseball equipment, and some outdoor signs. Petitioners at some time prior to 1976 had bought a lease from a school which had trained medical and dental assistants and, along with the lease, had purchased some of the equipment of the school including dental chairs and cabinets, x-ray equipment, darkroom equipment, a cardiograph machine, and other items including a medical and dental library. Petitioners attempted to run a medical assistants program to use this equipment but were unsuccessful. Petitioners had no records of the date of acquisition of the furnishings and fixtures or their cost. ULTIMATE FINDINGS OF FACT 1. Petitioners are entitled to deduct $ 20 as a charitable contribution in the year 1975 in addition *386 to the $ 1,170 allowed by respondent. The $ 20 was given in cash by petitioners to various organizations. 2. Petitioners are not entitled to deduct any amount in 1976 as a charitable contribution with respect to the gift of the Ford van to a charity, since they have failed to show that the gift was made by them rather than by the corporation. 3. Petitioners are entitled to deduct in 1975 as an automobile expense, in addition to the $ 1,127 allowed by respondent for such expenses, the amount of $ 1,800. This amount represents an estimate of the cost of the automobile expenses incurred by the Rosenthals in connection with the business of Enterprises which was not allowed by respondent. 4. In addition to the rent deduction allowed by respondent and conceded by respondent at the trial and on brief for the year 1975, petitioners are entitled to deduct an amount of $ 300 which is the twelfth payment of monthly rent to the Calvary United Methodist Church. 5. Petitioners are not entitled to deduct any of the rental amounts paid to A. M. Southworth and Southworth Associates, Inc., in 1976 for space used by Enterprises in computing their 1975 income since the income and expenses *387 of Enterprises are reportable on the cash basis of accounting. 6. In addition to the telephone expense of $ 11,608 allowed by respondent for 1975 as a business expense of Enterprises, petitioners are entitled to deduct $ 144 for the cost of maintaining an extra telephone in their home for receipt of incoming calls in connection with the operation of Enterprises in Tampa. 7. Petitioners have failed to show that the note from Eilers-Bradford Enterprises, Inc., and Hans Eilers was an obligation due to them rather than to the corporation, and for that reason they are not entitled to deduct any amount as a bad debt based on the nonpayment of that note. Also, petitioners have failed to show that the note became worthless in 1976. 8. Petitioners have failed to show that they are entitled to deduct in 1975 any part of the $ 900 claimed as travel, lodging, and telephone expenses in connection with Mr. Rosenthal's consulting business. 9. Petitioners have failed to show that they are entitled to deduct any part of the $ 12,000 claimed for depreciation in connection with the business of Enterprises in 1976. 10. Petitioners have failed to show that they are entitled to any deduction *388 for business expenses of Enterprises in excess of the amounts allowed by respondent except as heretofore set forth. 11. Petitioners have failed to show that they are entitled to any deductions for interest, taxes, or medical expense in addition to those allowed by respondent for either 1975 or 1976. 12. Petitioners have failed to show that the $ 15,373 claimed by Enterprises as a salary expense deduction was for salaries paid to employees of Enterprises rather than employees of the corporation, and have failed to show that this amount was not deducted by the corporation on its 1975 corporate tax return. 13. Petitioners have failed to show that an amount of $ 10,000 was paid by Enterprises to the corporation for use of the name Adelphi in 1975, or that any such payment, if made, would be an ordinary and necessary business expense. OPINION The issues here are purely factual. Many of petitioners' records in connection with Enterprises were introduced at the trial but the entries made in those records were not self-explanatory. Mr. Rosenthal testified at length with respect to the records which he kept and in most instances he was totally unable to give any satisfactory *389 explanation of how the records he kept supported the items claimed to be deductible on the Schedule C of his 1975 tax return. Many of the items which Mr. Rosenthal attempted to support by checks were paid by checks drawn in 1976. Mr. Rosenthal argued that these items were for 1975 expenses and that he should be able to accrue and deduct the items in 1975. The record shows that on the Schedule C with respect to Enterprises, petitioners stated that the basis of accounting used was "cash." There is nothing in the record to show that any other basis was used but in fact the record is clear that Enterprises' method of accounting was a cash basis. Therefore, petitioners are entitled to deduct only amounts paid in the year the deduction is claimed. Furthermore, petitioners were totally unable to show that the amounts paid by checks dated in 1976 that they claimed should be deducted in 1975 had not also been deducted in 1976. We have allowed deductions for none of the amounts claimed by petitioners to be deductible in 1975 where the check supporting the payment showed that the payment was actually made in 1976. The extra $ 300 we have allowed for payment of rent to the Calvary United *390 Methodist Church is based on Mr. Rosenthal's oral testimony. Although Mr. Rosenthal was unable to locate the check for that payment at the time of trial, he testified that he did in fact pay $ 300 every month in 1975 to the Calvary United Methodist Church as rent for Enterprises. The $ 20 charitable deduction we have allowed for 1975 in addition to the amount allowed by respondent in the notice of deficiency is likewise based on Mr. Rosenthal's oral testimony. The $ 1,800 we have allowed for additional automobile expenses is based on Mr. Rosenthal's oral testimony. The record shows that he did not maintain any log or diary to verify his automobile or travel expenses. The amount allowed by respondent was based on checks which were primarily for repairs. At the trial, Mr. Rosenthal offered no further documentary evidence to support either the claimed additional automobile expenses or travel expenses. However, from the oral testimony, the record is clear that these expenses in connection with Enterprises in 1975 exceeded the amount allowed by respondent. The provisions of section 274 require that travel expenses be substantiated by documentary evidence. Because of petitioners' total *391 failure to substantiate any travel expenses for 1975 under section 274, we have allowed no amount in addition to the amount allowed by respondent. Also, for failure to comply with the provisions of section 274, petitioners have failed to show that they are entitled to deduct any portion of the $ 900 claimed as travel expenses by Mr. Rosenthal in connection with a consulting business. The extra $ 144 we have allowed as telephone expense is likewise allowed on the basis of Mr. Rosenthal's oral testimony. He testified that he paid $ 12 per month to keep a telephone line in Miami primarily to receive incoming calls from Tampa. Respondent had allowed no deduction for this expense. One of the large items in issue consists of a $ 10,000 franchise cost which Mr. Rosenthal testified that Enterprises should have paid to the corporation because of using the name Adelphi. This amount was entered in the "L.R. Exchange" account, but apparently no cash was paid to the corporation by Enterprises. The record totally fails to show any justification for a payment of a $ 10,000 franchise fee by Enterprises for use of the name Adelphi in Tampa or that the amount was actually paid by Enterprises *392 to the corporation or that if the amount had been paid and was reasonable in amount it would not have been a capital expenditure. The next big item is the $ 15,373 salary expense. Mr. Rosenthal testified that this amount was salaries paid by the corporation to employees of Enterprises and that an adjustment of the payment was made through the "L.R. Exchange" account. He testified that the corporation should not have deducted the payment, but he was unable to state specifically that the corporation did not deduct it. The corporation deducted over $ 19,000 in salaries in 1975 other than the officers' salaries paid. Nothing in the record shows what these salaries were. The corporation reported sales of only $ 43,880 in 1975 as compared to $ 464,165 in 1974. In late 1974, it had disposed of much of its property. Petitioners made no showing of any salaries paid by the corporation to support the claimed $ 19,883 salary deduction unless the $ 15,373 here in issue is such a payment. We conclude that petitioners have failed to show any error in respondent's disallowance of the deduction claimed for the $ 15,373 salary payment. Petitioners have failed to show the cost of the depreciable *393 property used in the business of Enterprises or when it was acquired. Mr. Rosenthal was requested by the Court to bring in records to establish these facts but did not do so. He orally testified to some of the items used in Enterprises' business but could merely guess at the cost of these items and when they were acquired. Insofar as this record shows, allowable depreciation for years prior to 1976 would leave no amount to be allowed as depreciation in 1976. Mr. Rosenthal's testimony was that he had taken no depreciation on any of the property used in Enterprises' business prior to 1976 and the $ 12,000 claimed was intended to cover prior years as well as current years depreciation. On this record, petitioners have totally failed to prove that they are entitled to any depreciation deduction with respect to Enterprises' business for the year 1976. As set forth in our ultimate findings of fact number 7, petitioners have failed to show that they are entitled to any bad debt deduction in 1976. The "L.R. Exchange" account had big yearend adjustments and Mr. Rosenthal was totally unable to explain them. No diaries or logs were kept with respect to traveling expenses by Mr. or Mrs. *394 Rosenthal and the books of the corporation and the sole proprietorship, Enterprises, were intermingled. Clearly, a part of the underpayment of tax in this case is due to negligence. We therefore sustain respondent's determination of the addition to tax under section 6653(a). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. With respect to each deduction claimed by petitioners on their tax returns which was disallowed in whole or in part by respondent in the notices of deficiency, the parties have stipulated to (1) the amount claimed by petitioners, (2) the amount allowed by respondent, and (3) the amount remaining in issue. Since respondent made adjustments to numerous items and we have found the facts as stipulated, no further findings with respect to the various items disallowed in whole or in part will be made except as to amounts the Court finds are properly deductible in excess of amounts allowed by respondent. Certain amounts which were disallowed in the notice of deficiency have been conceded by respondent. These items are: (1) Respondent concedes that petitioners are entitled to $ 181.47 more of interest deduction for the year 1975 than was allowed in the notice of deficiency; (2) Respondent concedes that $ 250 claimed as a deduction in 1975 for expenses of sending an employee to a dental convention, which was included in advertising expense on Schedule C-2 of petitioners' tax return and disallowed by respondent, is properly allowable; (3) Respondent concedes that petitioners are entitled to rental deductions in a total amount of $ 250.31 paid to Calvary United Methodist Church in 1975 in connection with increased utility bills incurred by that church; (4) Respondent concedes that petitioners are entitled to deduct $ 328 in each of the years 1975 and 1976 as home office expense. The $ 328 amount had been disallowed in 1975 as part of the disallowance in part of a deduction claimed for utilities. Apparently no claim was made for home office expense in 1976 on petitioners' return, but was claimed at the trial; and (5) Respondent also concedes that petitioners are entitled to deduct $ 13,372.72 as a promotional expense in 1975 which is $ 27.72 more than the amount claimed originally on Schedule C-2 of petitioners' 1975 return.↩